**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
FRANK BURGIO,

                        Plaintiff,

       - against -

THE PRUDENTIAL LIFE INSURANCE
COMPANY OF AMERICA,

                     Defendant.
-----------------------------------------------------------X

**ORDER**

CV 06-6793 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      **PRELIMINARY STATEMENT**

Before the Court is Plaintiff's motion seeking to: (1) "compel Defendant to determine the sufficiency of its responses" to Plaintiff's request for documents and interrogatories, (2) depose "at least one of the people on the Committee responsible for the final claim decision upholding the termination of Plaintiff's claim" for disability benefits, (3) conduct a Rule 30(b)(6) deposition, and (4) serve subpoenas upon doctors who examined Plaintiff and/or reviewed Plaintiff's medical records and rendered opinions on his eligibility for disability benefits [DE 18]. The Court has thoroughly reviewed Plaintiff's motion papers, Defendant's opposition papers [DE 20, 21], Plaintiff's reply papers [DE 19], Plaintiff's April 8 and August 28, 2008 Notice of Supplemental Authority [DE 22, 24], and Defendant's September 5, 2008 letter responding to Plaintiff's Notice of Supplemental Authority [DE 25]. The parties appeared for oral argument on January 10, 2008. After a careful review of the parties' respective positions and the applicable case law, Plaintiff's motion to compel is hereby GRANTED.

## II.  BACKGROUND

The following factual recitation is taken from the parties' briefs in connection with this motion, and the Court notes that many of the specific facts are disputed by the parties.  Plaintiff was employed by Defendant Prudential Life Insurance Company of American ("Defendant" or "Prudential") as a District Insurance Agent.  In either May 1993 or 1994, Defendant accepted Plaintiff's claim for long-term disability benefits under its long-term disability Plan ("LTD Plan").  Plaintiff's LTD benefits were subsequently terminated by Defendant in either November or December of 2003.  Defendant claims that Plaintiff's LTD benefits were terminated based upon surveillance videos of Plaintiff engaging in specific physical activities, an independent medical examination ("IME") conducted by Dr. Craig Rosenberg, and various other medical documents.  Plaintiff agrees that these were Defendant's purported reasons for terminating his LTD benefits, but states that the termination of his benefits was also based upon "a paper review of medical records from hired doctors for Prudential."  Pl. Mem. of Law in Supp. of Mot. to Compel Discovery ("Pl. Mem.") at 2.  According to Defendant, Plaintiff initiated the appeals process provided for under the LTD Plan and the decision to terminate Plaintiff's LTD benefits was upheld through four separate appeals.  Defendant further asserts that the decision to terminate was supported by independent reviews of three different doctors (Dr. Rosenberg, Dr. Kaplan, and Dr. Foye).  Plaintiff was also examined in 2002 by Dr. Steven Adler.

Plaintiff commenced this action in December 2006 pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), for unlawful denial of benefits.  During the May 30, 2007 Initial Conference, I discussed with the parties their disagreement over the appropriate standard of review applicable to Defendant's decision to

terminate Plaintiff's LTD benefits and stated "it appears to me that the scope of review (as contrasted with the scope of discovery) in this matter, whether arbitrary and capricious or *de novo*, is a matter properly within the District Court's jurisdiction, unless Judge Seybert otherwise specifically refers that issue to me" [DE 11]. I further noted, however, that the determination of the appropriate standard of review did not stay discovery because "[e]ven if Judge Seybert were to decide that the arbitrary and capricious standard is the proper scope of review, pretrial discovery in this matter is not foreclosed." *Id.* Accordingly, I reserved decision as to whether Plaintiff "has adequately alleged a conflict on the part of Defendant Prudential (which is both the employer of Plaintiff and the plan sponsor of the LTD Plan at issue here) which would allow broader discovery" and noted that "Plaintiff's argument essentially is that Prudential is a conflicted decision maker because it has a financial interest in the outcome of Plaintiff's claim which prevented Plaintiff from receiving a full and fair review of his claim." *Id.*

I did permit limited discovery to proceed, prior to making a determination on the conflict of interest issue. Specifically, Defendant was directed to:

♦ Identify the information considered by the LTD administrator and/or decision maker in reaching its decision to terminate Plaintiff's benefits; and

♦ Produce excerpts of any policies, procedures, and/or guidelines, including manuals, used by Defendant in reaching its determination to terminate benefits, to the extent such documents are not privileged; and

♦ Produce the *curriculum vitae* for medical, vocational and expert personnel identified in the case file, including any individuals involved in the decision to terminate Plaintiff's LTD benefits; and

♦ Certify that the entire administrative record had been produced.

On June 26, 2007, the parties submitted a document to the Court entitled "Amendment to Parties' Joint Proposed Discovery Plan," which stated that "Defendant is not required to serve any requests for production of documents, interrogatories, or other written discovery, until the standard of review and scope of discovery is [*sic*] clarified by order of the Court, or agreement of the parties, and the Court issues an order setting the due date for service of such discovery, if any" [DE 10].  On July 5, 2007, the Court responded by ordering the Defendant to comply with the discovery obligations outlined in the May 30, 2007 Civil Conference Minute Order [DE 13].

## III.  THE PARTIES' CONTENTIONS

### A.  Plaintiff's Arguments

Plaintiff argues that the additional discovery he seeks is appropriate in his ERISA denial of benefits case, regardless of whether the standard of review is *de novo* or arbitrary and capricious.  Plaintiff asserts that, regardless of the standard of review, certain categories of information, such as the nature of the information considered by the fiduciary in making his decision, the fiduciary's competence to evaluate the administrative record, and whether the fiduciary should have sought outside technical assistance to review the claim, are always amenable to discovery.  Pl. Mem. at 4.  Plaintiff further contends that even if the LTD Plan contained discretionary language that would compel an arbitrary and capricious standard of review, "discovery as to the issue of the influence of Prudential's conflict of interest upon its handling of Plaintiff's claim is also relevant and appropriate."  *Id.*

Plaintiff "recognizes" Defendant's argument that "some Second Circuit district courts have required a showing of good cause prior to securing discovery," and asserts that he has "strong indicia of good cause" to support his discovery requests.  *Id.* at 5-6.  Specifically,

Plaintiff points to: (1) "the fact that Prudential's documentation to the various medical reviewers that were hired or retained by Prudential in connection with Mr. Burgio's claim were provided 'editorializations' of materials that were intentionally biased against Mr. Burgio," and (2) "the fact that Prudential altered its own view of Plaintiff's occupational requirements to suit its purposes during the pendency of the claim." *Id.* at 6.

According to Plaintiff, examples of the alleged "editorializations," which Plaintiff contends were attempts by Defendant to influence the doctors who should have acted independently, include:

- Defendant asked Dr. Adler whether Plaintiff was limited or restricted in his activities of daily living (which Plaintiff contends is irrelevant) and whether Plaintiff's "perceived incapacitation" was appropriate, or excessive, and Defendant further requested that Dr. Adler list any "discrepancies, inconsistencies, or contradictions, if any" found in Plaintiff's medical records. (Decl. of Jason Newfield ("Newfield Decl."), Ex. A at 2).

- Defendant sent a copy of surveillance tapes of Plaintiff to Dr. Rosenberg before Plaintiff's IME and, after receiving Dr. Rosenberg's IME report, sent another letter "characterizing the surveillance tape and requesting an addendum to the report." (Newfield Decl., Exs. C & D). According to Plaintiff, Dr. Rosenberg's conclusions regarding Plaintiff's physical condition in the addendum IME report was a "180 reversal of his view" in the initial IME report. Pl. Mem. at 7; *compare* Def. Appx. of Exhibits, Ex. C (Dr. Rosenberg's initial report and addendum).

- Defendant asked Dr. Kaplan whether Plaintiff's "perceived incapacitation" was appropriate, or excessive, and Defendant requested that Dr. Kaplan list any "discrepancies, inconsistencies, or contradictions, if any" found in Plaintiff's medical records. Defendant also informed Dr. Kaplan that Plaintiff's claim for benefits had been terminated based upon surveillance activity and Plaintiff's IME and further stated that "[t]hese findings support that Mr. Burgio's demonstrated level of activity is greater than what would be required from him at his job as Sales Representative." (Newfield Decl., Ex. E).

- Defendant asked Dr. Foye to list any "discrepancies, inconsistencies, or contradictions, if any" found in Plaintiff's medical records. (*Id.*, Ex. F at 1).

Plaintiff also proffers the following examples of instances when Defendant allegedly altered its view of Plaintiff's occupational requirements:

- In Defendant's February 5, 2002 letter to Dr. Adler, Defendant described Plaintiff's job duties as requiring him to work evenings, function under financial pressures, and make numerous service calls each week to homes/businesses of clients (which could include travel and irregular hours). (Newfield Decl., Ex. A).

- By contrast, in a November 10, 2003 letter to Dr. Rosenberg, Defendant described Plaintiff's job as "light duty" requiring occasional walking, standing, sitting, and not requiring Plaintiff to lift more than ten pounds. (*Id.*, Ex. D).

- In an April 4, 2004 letter to Dr. Kaplan, Defendant described Plaintiff's job as "light duty." (*Id.*, Ex. E).

- In its May 6, 2005 letter to Dr. Foye, Defendant described Plaintiff's job as "light duty," but did note that while driving was not an essential function of the job, sales representatives "must regularly make sales calls and service their clients." (*Id.*, Ex. F).

Plaintiff posits four additional arguments in support of his request for discovery. First, he alleges that although "disability" is defined by the LTD Plan as an inability of the employee "to perform any and every duty pertaining to his occupation with the Employer . . . Prudential's claim handling reflects that it was actually applying a more generic definition of disability." Pl. Mem. at 8. Specifically, Plaintiff points to a "SOAP" note[1] (which appears to set forth the rationale for upholding the termination of Plaintiff's benefits, although it is not clear from the face of the document exactly what it is or who prepared it), which states that "[i]n terms of EE's work capacity, his job, would be most appropriately characterized, as light work which in its usual definition, can include standing and walking to a sign [*sic*] degree." Newfield Decl., Ex. G. Plaintiff contends that this SOAP note was "an admission that Prudential was not actually

---

[1]     It is unclear from the record exactly what "SOAP" stands for.

considering Mr. Burgio's job, but, rather, a generalized approach to his occupation, and characterizing it in such a way as to obviate any consideration of the actual performance of his occupation . . . ."  Pl. Mem. at 8.

Second, Plaintiff contends that when Defendant conducted Plaintiff's intermediate appeal of the decision to deny him LTD benefits, "it appears as if Prudential simply relied upon the prior documentation . . . rather than afford him the full and fair review of his claim that ERISA requires."  *Id.*

Third, Plaintiff asserts that "[f]urther evidence that Prudential was influenced by its conflict of interest is the fact that it relied upon Dr. Foye, a well-known insurance doctor, who never examined or treated Plaintiff."  *Id.* at 9.  Plaintiff contends that Dr. Foye's opinion was "chastised" in an unrelated court opinion.  *Id.* (citing *Wein v. Prudential Ins. Co. Of Am.*, 2006 U.S. Dist. LEXIS 73308 (E.D.N.Y. 2006)).

Fourth, Plaintiff alleges that Defendant "failed to advise Mr. Burgio that his efforts to prove his entitlement to further benefits would be limited to the administrative record, despite being placed on notice by Mr. Burgio several times as to his complete misapprehension as to the limitations of the litigation record."  *Id.* at 9.

B.     **Defendant's Contentions**

Defendant argues that Plaintiff has failed to assert the existence of any conflict of interest and "has not established at all that a reasonable likelihood exists that the broad and extensive discovery he demands outside the Administrative Record will satisfy the good cause requirement."  Def. Prudential's Mem. of Law in Opp'n to Pl.'s Mot. to Compel Discovery ("Def. Mem.") at 1.  According to Defendant, "[e]ven if the Court considers this a potential

conflict of interest case, which it should not, in ERISA cases a plaintiff must meet his/her burden

of establishing good cause for the court to consider additional evidence outside the

administrative record, such as a 'demonstrated conflict of interest in the administrative reviewing

body.'" *Id.* at 6 (quoting *Krizek v. Cigna Group, Inc.*, 345 F.3d 91, 97-98 (2d Cir. 2003)).

Defendant asserts that Plaintiff has not met his "affirmative burden of proof to establish that the

plan administrator was sufficiently conflicted in order to expand review beyond the

administrative record." *Id.* at 8.

      First, Defendant argues there is no structural conflict of interest. In support of this

contention, Defendant notes that Prudential established the Prudential Welfare Benefits Trust

(the "Trust"), which is a Voluntary Employees Beneficiary Association ("VEBA"), to fund

certain benefits, including the long-term disability ("LTD") benefits at issue here. *Id.* at 8; Def.

Appx. of Exhibits, Ex. J. The LTD component of the VEBA Trust was pre-funded by Prudential

and the Trust component for self-insured LTD benefits was fully funded at the time of the

termination of Plaintiff's benefits. Def. Mem. at 8-9. Therefore, Defendant asserts, from at least

1995 until now, self-insured LTD benefits have always been paid out of the Trust – they have

never been paid out of Defendant's operating budget or assets. *Id.* at 9. Furthermore, the trustee

of the Trust is "not responsible for the determination, computation or application of any plan

benefits." *Id.*; Def. Appx. of Exhibits, Ex. K.

      Defendant cites two cases within the Second Circuit to support indirectly its argument

that no structural conflict of interest arises where an employer pays benefits out of a funded trust

component. These cases, according to Defendant, "suggest that the Second Circuit would

recognize a distinction between a situation, as here, where benefits are paid out of a Trust, and

other scenarios, where benefits are paid from the operating assets of the company or under a premium-based insurance policy." Def. Mem. at 9-10 (citing *Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997) ("Because an insurance company pays out to beneficiaries from its own assets *rather than the assets of trust*, its fiduciary role lies in perpetual conflict with its profit-making role as a business.") (emphasis added); *Waksman v. IBM Separation Allowance Plan*, 138 Fed. Appx. 370, 371 (2d Cir. 2005) (unpublished) ("The mere fact that the administrator is employed by a party that could suffer financially under the administrator's decision is not enough to lessen the deference due to the administrator.")). Defendant also relies on cases from the Third Circuit which more directly support the proposition that a fully-funded plan will not create a conflict of interest. *See* Def. Mem. at 10-11. By contrast, Plaintiff urges the Court to reject this argument by asserting that there is reason to believe the plan administrator may have had a conflict of interest because "the other employee benefits subject to Plaintiff's continued eligibility for disability benefits were financially significant to the plan administrator, notwithstanding the purported VEBA funding of the Trust." Pl.'s Reply Mem. of Law in Further Supp. of Mot. to Compel Discovery ("Reply Mem.") at 4.

Second, Defendant argues that even if the Court determined that a conflict of interest could be established based upon the existence of procedural irregularities (in the absence of a structural conflict of interest), "there are no irregularities here that would satisfy the 'good cause' standard for discovery." Def. Mem. at 12 (citing *Locher*, 359 F.3d at 295 (finding "good cause" for consideration of evidence outside the administrative record when "the procedure employed in

arriving at the claim determination were flawed").[2]  Defendant notes that courts in other

jurisdictions have identified other specific procedural flaws that are relevant to determining

whether a conflict of interest exists, such as: (1) reversal of a position without additional medical

evidence, (2) self-serving selectivity in the use and interpretation of physicians' reports, (3)

disregarding staff recommendations that benefits be awarded, and (4) requesting a medical

examination when all evidence indicates the existence of a disability.  Def. Mem. at 13.

Defendant contends that no such procedural irregularities exist here, and therefore Plaintiff

cannot establish good cause for discovery based upon the existence of procedural irregularities.

*See id.* at 13-14.

Defendant maintains that its questions to the doctors who consulted on Plaintiff's LTD

claim did not "demonstrate or even suggest any conflict of interest, but rather constitute proper, if

not standard, inquiries in disability cases."  *Id.* at 16.  Specifically, Defendant contends that its

correspondence with Dr. Rosenberg was necessary to make sure that Dr. Rosenberg viewed the

surveillance tapes so that he could make a decision based upon all the record evidence.  *Id.* at 17.

According to Defendant, Dr. Rosenberg's initial IME report contained an inherent contradiction:

the initial report contained Dr. Rosenberg's opinion that Plaintiff was not capable of performing

every duty pertaining to his job position, but then Dr. Rosenberg concluded that Plaintiff had no

limitations with sitting or working a 8-hour work day.  Defendant argues that Dr. Rosenberg's

addendum simply takes into account all the record evidence, including the surveillance tapes

---

[2]      The Second Circuit's decision in *Locher* focused on admitting evidence, not on
permitting discovery.  Indeed, the district court in *Locher* considered *deposition testimony* of one
of the defendant's senior benefit analysts that worked on the plaintiff's appeal as evidence of
procedural irregularities.  *See Locher*, 389 F.3d at 296.

(which contradicted Plaintiff's statements to him), and clarified his initial report's conclusions. *Id.* at 18; *see also* Def. Appx. of Exhibits, Ex. C.

With respect to Plaintiff's assertion that Defendant changed the description of Plaintiff's job duties to suit its purposes, Defendant claims that Plaintiff's formal job description has always been a part of the administrative record and, in any event, this argument "seems to allege [Plaintiff's] feeling that Prudential somehow acted arbitrarily, but does not indicate that Prudential had any operative conflict of interest." Def. Mem. at 18-19. Furthermore, Defendant asserts that the SOAP note referred to by Plaintiff merely comments on Dr. Kaplan's findings and does not support Plaintiff's argument that Defendant characterized his job as generally "light duty." Plaintiff's actual job description was provided to each of the physicians who prepared a report, and Defendant maintains that the job description itself comports with the normal meaning of the phrase "light duty." *Id.* at 20; *see also* Def. Appx. of Exhibits, Ex. I.

With respect to the intermediate appeal, Defendant argues that its conduct demonstrates an "ongoing and expressed willingness to review any medical records or other information or documentation submitted by Mr. Burgio," and thus refutes Plaintiff's claim that Defendant simply relied on prior documentation in determining Plaintiff's appeals. Def. Mem. at 21; *see also* Def. Appx. of Exhibits, Ex. E. Defendant also states that Plaintiff's allegations with respect to Dr. Foye lack merit, and that statements of the court in *Wein* regarding Dr. Foye "are specific to that case, not transferrable or applicable to this matter, and clearly do not establish good cause for any discovery on an alleged conflict of interest." Def. Mem. at 21. Finally, Prudential disputes Plaintiff's allegation that he was not advised that his efforts to prove his entitlement to benefits would be limited to the administrative record. Noting that Plaintiff was afforded four

appeals, Defendant asserts that each of the appeal review letters advised Plaintiff of his right to submit additional documentation in support of his claims. *Id.* at 21-22.

## IV. APPLICABLE LAW

### A. Motion to Compel Standard

A motion to compel is entrusted to the sound discretion of the district court. *See Am. Sav. Bank, FSB v. UBS Paine Webber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998). A district court is considered to have abused its discretion only "if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

### B. Standard of Review for ERISA Denial of Benefit Cases

Although not at issue at this juncture,[3] it is helpful to begin the Court's analysis by noting the two different standards of review a court must consider when commencing review of an ERISA action. Several arguments advanced by Defendant in support of its position that discovery should be limited to the administrative record actually go to the issue of the appropriate standard of review. The question of the standard of review applicable in an ERISA

---

[3] As this Court noted in its May 30, 2007 Order, "it appears to me that the scope of review (as contrasted with the scope of discovery) in this matter, whether arbitrary and capricious or *de novo*, is a matter properly within the District Court's jurisdiction, unless Judge Seybert otherwise specifically refers that issue to me." [DE 11].

action is distinct from the question of the proper scope of discovery. The Court is mindful, however, that the former question does have some impact on the latter.

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (internal quotation marks omitted). The Supreme Court, however, has made clear that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such discretion is given, a district court must review the administrator's denial of benefits deferentially, and may reverse only if the administrator's decision was arbitrary and capricious. *See Fay*, 287 F.3d at 104. When a plan does not grant discretionary authority, a district court "reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo*." *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 98 (2d Cir. 2003).

Under a *de novo* standard of review, a district court may consider evidence outside the administrative record to determine issues of plan interpretation. *Locher*, 389 F.3d at 293 (citing *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61 (2d Cir. 1997)). In addition, when conducting a *de novo* review a district court may examine evidence outside the administrative record to resolve factual disputes upon a showing of "good cause," which could include a showing that "the administrator was not disinterested." *Id.* at 294. The Second Circuit made clear, however, that such "a conflict of interest does not *per se* constitute 'good cause' to

consider evidence outside of the administrative record upon a *de novo* review of factual issues bearing on an administrator's denial of ERISA benefits." *Id.* (clarifying holding in *DeFelice*).

Defendant contends that language in various LTD Plan documents "give[s] Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." Def. Mem. at 5. For example, the Summary Plan Description states: "The Prudential's administration, interpretation, and application of the Plans' provisions is binding on all parties." Def. Appx. of Exhibits, Ex. A at 1256. The Administrative Services Agreement provides that the LTD Plan fiduciary "shall serve as the final review committee under the Plan and shall have sole and complete discretionary authority to determine conclusively for all parties . . . any and all questions arising from the administration of the Plan and interpretation of all Plan provisions . . . ." *Id.* at 1239. Although Defendant correctly notes that "the Court will not decide the scope of review at this time," Defendant asserts that "realistically stated, there really is no doubt at all that the arbitrary and capricious standard will apply." Def. Mem. at 5.

Were District Judge Seybert to determine ultimately that the "arbitrary and capricious" scope of review is appropriate, however, discovery outside the administrative record is not foreclosed. Even under an "arbitrary and capricious" standard of review, courts (both within and outside the Second Circuit) have considered evidence outside the administrative record in certain circumstances. *See Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50, 53 (S.D.N.Y. 2006) (citing *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 174 (2d Cir. 2001) (noting that "the district court will not be confined to the administrative record" to determine "whether Empire's decision to deny [Plaintiff's] coverage request was tinged by a conflict of interest")); *see also Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995)

(approving and relying on pretrial discovery in ERISA denial of benefits case when "arbitrary and capricious" standard was used). For example, a court may properly rely on discovery outside the administrative record to evaluate:

> (I) the exact nature of the information considered by the fiduciary in making its decision, (ii) whether the fiduciary was competent to evaluate the information in the administrative record, (iii) how the fiduciary reached its decision, and (iv) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim

*Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 103 (W.D.N.Y. 2000) ("[R]eview under this deferential [arbitrary and capricious] standard does not displace using pretrial discovery to determine the actual parameters of the administrative record and whether or not the fiduciary acted arbitrarily and capriciously with respect to a claim for benefits under a plan . . . .").

### C. Standard to Determine Whether to Allow Additional Discovery

As another court in this District has noted, "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." *Allison v. Unum Life Ins. Co.*, No. CV 04-0025, 2005 WL 1457636, at * 11 (E.D.N.Y. Feb. 11, 2005). "If discovery is allowed, the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to include information that discovery yielded, the nature of which is not yet known." *Id.*

The Court recognizes, as Defendant argues, that some courts have required a party seeking discovery to make a "good cause" showing. *See, e.g.*, *Wagner v. First Unum Life Ins. Co.*, 100 Fed. Appx. 862, 864 n.1 (2d Cir. 2004) (unpublished summary order) ("[D]iscovery

may be appropriate in some cases where a petitioner seeks to show of conflict of interest . . . But because Wagner has not shown 'good cause' in support of her request, we affirm the court's decision below denying discovery."); *Lane v. Hartford*, No. 06 Civ. 3931, 2006 WL 3292463, at * 2 (S.D.N.Y. Nov. 14, 2006) (applying arbitrary and capricious standard of review and noting that "[d]iscovery may be allowed [ ] where a plaintiff shows good cause for the court to consider additional evidence outside the administrative record, such as when there is a basis for believing that a plan administrator may have had a conflict of interest . . . Even upon a showing of good cause, whether to allow discovery beyond the administrative record is within the reviewing court's discretion."); *McGann v. Travelers Property Casualty Corp. Welfare Ben. Plan*, No. 06-CV-527, 2007 WL 2769500, at *10 (E.D.N.Y. Sept. 21, 2007) (denying summary judgment without prejudice to renew upon the completion of limited discovery because "the Court finds that Plaintiff has demonstrated good cause to look beyond the administrative record and conduct discovery" on the issue of "whether Plaintiff has presented evidence tending to establish that the plan administrator was conflicted and that the procedures employed in arriving at the claim determination were flawed").

Defendant relies heavily on *Wagner v. First Unum Life Insurance Company* as the purported "only decision by the Second Circuit Court of Appeals . . . that directly addresses the issue of the scope of discovery in ERISA cases." Def. Mem. at 14-15. In *Wagner*, the Second Circuit affirmed a district court's decision to apply the "arbitrary and capricious" standard of review to the plaintiff's ERISA denial of benefits case. In a footnote, the court set forth the following as its entire analysis concerning the appropriate scope of discovery:

> Wagner also asserts that the district court should have afforded her
> discovery to investigate the effect of First Unum's conflict of interest
> on the decision to deny her benefits. Notwithstanding defendant's
> contention that such discovery is precluded by our general statement
> that 'under the arbitrary and capricious' standard [a district court] is
> limited to the administrative record," discovery may be appropriate
> in some cases where a petitioner seeks to show a conflict of interest.
> But because Wagner has not shown "good cause" in support of her
> request, we affirm the court's decision denying discovery.

*Wagner*, 100 Fed. Appx. at 864 n.1 (internal citations omitted). As an initial matter, the Court

notes that *Wagner* is a summary order and that "rulings by summary order do not have

precedential effect." Local Rules of the Second Circuit, Rule .23. In addition, citation to

summary orders filed before January 1, 2007, such as *Wagner*, is prohibited. *Id.* Perhaps for this

very reason, only two other courts have cited to *Wagner*. First, the court in *Trussel v. Cigna Life

Insurance Company of New York* referred to *Wagner* as support for the proposition that discovery

outside the administrative record is permitted on the issue of the existence of a conflict of

interest. 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008). Second, the court in *Anderson v. Sotheby's

Inc. Severance Plan* noted that "*Wagner* provides no guidance on how strong a showing a

plaintiff must make to convince a court that it should consider a document outside the

administrative record when it is conducting a deferential review." No. 04 Civ. 8180, 2005 U.S.

Dist. LEXIS 9033, at *11 (S.D.N.Y. May 13, 2005).

Summary orders such as *Wagner* are "often abbreviated, and may omit material required

to convey a complete, accurate understanding of the disposition and/or the principles of law upon

which it rests . . . Non-precedential summary orders are used to avoid the risk that abbreviated

explanations in summary orders might result in distortions of case law." *See In re Global

Crossing Ltd.*, 385 B.R.52, 75 (Bkrtcy S.D.N.Y. 2008) (quoting Local Rules of the Second

Circuit, Rule 32.1, "Comment").  For this reason, the Court will abide by the Second Circuit rule prohibiting it from affording *Wagner* precedential value.

The Court agrees with other courts within the Second Circuit that in order to justify discovery beyond the administrative record, Plaintiff "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Trussel*, 552 F. Supp. 2d at 390 (internal quotation marks omitted).  As noted in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle:  To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Anderson*, 2005 U.S. Dist. LEXIS 9033 at *16 (finding plaintiff "must show a reasonable chance that the requested discovery will satisfy the good cause requirement" to be entitled to discovery outside the administrative record).  "The good cause standard required to obtain evidence beyond the administrative record [through discovery] is therefore less stringent than when requesting that the court [ ] consider such evidence in its final determination." *Trussel*, 552 F. Supp. 2d at 390-91.

This determination is squarely in line with the holdings of several other courts within this Circuit.  *See, e.g.*, *Garg v. Winterthur Life*, No. 07 CV 0510, 2008 WL 4004960, at *7 (E.D.N.Y. Aug. 26, 2008) (unpublished) ("At this point, the Court finds that the plaintiff has shown a reasonable chance that additional discovery may lead to information that will satisfy the good cause requirement.  Thus, the Court finds that discovery in this action may proceed outside of the administrative record, in order to allow the court to determine the appropriate standard of review.") (internal citation omitted); *Hogan-Cross v. Metro. Life Ins. Co.*, No. 08 Civ. 0012,

2008 WL 2938056, at *2 (S.D.N.Y. July 31, 2008) ("Accordingly, Met Life's notion that discovery is inappropriate in this case because 'there is no evidence in the administrative record of any actual conflict,' a dubious proposition to begin with before [*Metro. Life Ins. Co. v.] Glenn*, [128 S.Ct. 2343 (2008),] is misguided. The question here, as in all cases, is whether the discovery sought is relevant in itself or 'appears reasonably calculated to lead to the discovery of admissible evidence.'"); *Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 722-23 (S.D.N.Y. 2007) (conducting an *in camera* review of disputed discovery documents to "determine whether the [documents] actually contained any relevant information" and ordering production of one such document because "the Court is satisfied that the agreement is relevant to Plaintiff's claims in this case"); *Mitchell*, 237 F.R.D. at 54 (finding that because "[w]e cannot say that the information sought has no relevance to this case," the plaintiff could depose three of the defendant's employees to gather information relating to the defendant's alleged conflict of interest, the nature of the information considered by the defendant in making the decision to deny benefits, the criteria used for the defendant's decision to deny benefits, and the completeness of the administrative record); *Samedy v. First Unum Life Ins. Co. of Am.*, No. 05-CV-1431, 2006 WL 624889, at *2 (E.D.N.Y. Mar. 10, 2006) (allowing plaintiff to depose a former employee of the defendant to explore whether the defendant's status as both claim insurer and administrator created a structural conflict of interest when plaintiff provided a "minimally sufficient basis to grant plaintiff limited discovery"); *Nagele*, 193 F.R.D. at 109-111 (overruling relevancy objections to interrogatories and ordering responses to interrogatories that called for information relevant to establish, *inter alia*, a conflict of interest and/or the independent judgment of a medical advisor).

In *Allison v. Unum Life Insurance Company*, 2005 WL 1457637 at *13, for example, the court found that the defendant-employer had a clear conflict of interest (in that the employer was "both the payor and the entity that determined entitlement"), although it was less clear whether the defendant "was in fact influenced by the conflict." In addition, the court found that the record did not make clear whether the medical professional who reviewed the plaintiff's claim was operating under a conflict of interest or whether any such conflict influenced his determination. *Id.* As such, the court allowed discovery, including depositions and document production, with respect to (1) the medical consultant used by the defendant in denying the plaintiff's claim for benefits, (2) the defendant's medical review procedures, and (3) the defendant's adherence to ERISA requirements. *Id.* at *11. The court reasoned that the plaintiff "was entitled to discovery about whether First Unum and/or [First Unum's medical consultant] had a conflict when the claim was determined, and whether that conflict influenced the determination." *Id.* at *13. Magistrate Judge Wall "reiterate[d] that allowing discovery is not tantamount to a ruling that the information gleaned from discovery will be considered by the court in its *de novo* review. That determination will be made by the district judge at her discretion. The discovery is intended only to give the plaintiff an opportunity to show that good cause exists for going outside the administrative record." *Id.*

Here, as in *Allison*, Plaintiff argues that Defendant may have operated under a conflict of interest in that his eligibility for LTD benefits was allegedly tied to his continued eligibility for other employee benefits such as life insurance. Defendant contends in opposition that there is no structural conflict of interest in this case "[b]ecause the self-insured LTD benefits . . . were funded by, and paid out of, the Trust." Def. Mem. at 9. Defendant also acknowledges, however,

that there is no "Second Circuit case law addressing fully the issue of whether a structural conflict of interest arises where an employer pays benefits out of a funded trust component." *Id.* The Court cannot, and need not, determine at this time whether a structural conflict of interest existed as a result of Defendant's payment of LTD benefits through the VEBA Trust. Likewise, this Court is not bound by case law outside the Second Circuit and no precedential case law from within the Second Circuit has been presented to the Court. In the exercise of my discretion, I find that there is enough evidence raised by Plaintiff of a potential conflict of interest to warrant limited discovery outside the administrative record to the extent set forth in this Order.

In addition, this case is akin to *Allison* in that it is not clear whether the medical professionals who reviewed Plaintiff's claim were operating free from any conflict. As discussed below, Plaintiff alleges that any prior relationship Defendant had with these medical professionals may have influenced their determination as to his eligibility for LTD benefits. Furthermore, the record demonstrates that correspondence between Defendant and the medical professionals may raise questions as to the influence Defendant had on the outcome of these physicians' determinations.

*Lane v. Hartford*, cited by Defendant, is distinguishable from the present case. There, the court found that the plaintiff had not demonstrated "good cause" to warrant discovery when she failed to allege the existence of a conflict of interest. The court noted that the plaintiff did not "sufficiently explain why discovery is needed – except for her repeated assertion that it is needed to determine whether she received a 'full and fair review.'" 2006 WL 3292463 at *2. Here, by contrast, Plaintiff has alleged that a conflict of interest exists – specifically, Plaintiff asserts that his eligibility for LTD benefits was tied to his eligibility for other monetary benefits.

Furthermore, Plaintiff has posited numerous specific reasons he believes that he is entitled to discovery, including allegedly inappropriate correspondence between Defendant and the medical providers who determined Plaintiff's eligibility for LTD benefits. According to Plaintiff, this correspondence potentially constituted a "procedural irregularity" sufficient to justify additional discovery.

Similarly, *Administrative Committee of the Time Warner, Inc. v. Biscardi*, also relied on by Defendant, is distinguishable from the instant matter. There, the court found the defendants, as the parties seeking benefits under the plaintiff's ERISA-governed benefits plan, did not "make a sufficient showing under Rule 56(f) to merit discovery on [the conflict of interest] issue" because the defendants did not specify "what facts they expect the discovery they seek to show," "how those facts would create an issue of material fact as to whether the Committee's decision was in fact influenced" by the alleged conflict of interest, or even "what discovery is aimed at showing that the Committee was influenced by a conflict of interest, and what discovery relates solely to the merits of the Committee's determination." No. 99 Civ. 12270, 2000 WL 1721168, at *7-8 (S.D.N.Y. Nov. 17, 2000). Here, by contrast, Plaintiff has sufficiently articulated the alleged procedural irregularities and potential conflict of interest at issue, as well as the discovery he wishes to take in order to gather relevant evidence.

Accordingly, Plaintiff will be entitled to take discovery outside the scope of the administrative record if he can demonstrate there is a reasonable chance that the discovery sought will satisfy the good cause requirement.

## V.    DISCUSSION

Plaintiff's motion to compel identified four general discovery categories: (1) Plaintiff's document requests and interrogatories; (2) a deposition of "at least one of the people on the Committee responsible for the final claim decision upholding the termination of Plaintiff's claim"; (3) a Rule 30(b)(6) deposition; and (4) subpoenas to be served upon the doctors or other medical professionals who examined Plaintiff and/or reviewed his medical records and rendered opinions.  *See* Pl. Mem. at 1.  The Court examines each of these categories in turn.

### A.    Plaintiff's Interrogatories and Document Requests

As noted during oral argument, the Local Civil Rules in this district require any party making a motion involving discovery requests or responses to "specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed."  Local Civil Rule 37.1.  Plaintiff's counsel acknowledged that he had not complied with this Local Civil Rule in framing Plaintiff's motion to compel, but argued that the instant dispute centers around Plaintiff's overall entitlement to discovery beyond what Defendant has already produced and beyond what the Court ordered Defendant to produce as part of its May 30, 2007 Order.[4]  Plaintiff's entitlement to further discovery, however, cannot be evaluated without some parameters.  Accordingly, the Court will be guided by Plaintiff's requests for information contained in its interrogatories (which were supplied to the Court) as well as Plaintiff's specific contentions in its motion papers regarding its entitlement to certain documents.

---

[4]     During oral argument, Plaintiff's counsel informed the Court that Defendant had satisfactorily complied with the Court's May 30, 2007 Order which required Defendant to produce certain documentation.

1.    ***Information Regarding Defendant's Relationships to Medical Providers***

Plaintiff seeks certain information regarding Defendant's relationship to the doctors, consultants, and other medical professionals who reviewed Plaintiff's application for LTD benefits.  For example, Plaintiff seeks to discover the number of times Defendant engaged these individuals to perform medical reviews or examinations of disability claimants as well as the compensation paid to each of them for the performance of such services.  *See* Newfield Decl., Ex. I (Interrogatory Nos. 7 and 9); *see also* Pl. Mem. at 10.  Defendant has offered to produce an affidavit from an authorized company representative verifying that Defendant has no ongoing contracts/agreements with any physicians identified in the Administrative Record, but merely compensates them for performing their independent medical review services on a case-by-case basis.  Def. Mem. at 23-24.

"Whether a medical advisor to a plan administrator exercises independent judgment or functions as an arm of the administrator is relevant to the issue of arbitrary decision making as are the credentials of such advisors."  *Nagele*, 193 F.R.D. at 111.  The Court finds that there is a reasonable chance that permitting this requested discovery regarding Defendant's financial arrangements with these medical professionals as well as the number of times they have been retained by Defendant to provide similar services may lead to evidence that will satisfy the good cause requirement.  *See Allison*, 2005 WL 1457636 at *13 (permitting discovery as to the doctor who reviewed plaintiff's claim for benefits when it was "not clear whether [the doctor] operated under a conflict of interest or if such conflict affected his decision"); *Nagele*, 193 F.R.D. at 111 (requiring production of information regarding defendant's financial arrangements between

doctor and defendant, the number of instances the doctor found the claimant disabled, and the number of IMEs conducted by the doctor for defendant).

The correspondence between Defendant and these medical providers, particularly Defendant's correspondence with Dr. Rosenberg regarding his consideration of the surveillance tapes, further supports the Court's determination that discovery as to Defendant's prior relationships with the medical providers is appropriate. The record before the Court raises a question as to the impact of this correspondence on the physicians' approach to evaluating Plaintiff's medical condition.

The Court finds that the affidavit proffered by Defendant to demonstrate that it does not have "ongoing contracts" with these medical professionals is insufficient. Plaintiff is entitled to more detailed information about Defendant's past relationships with these medical professionals. Therefore, with respect to the four individuals listed in Plaintiff's Interrogatory No. 9, Defendant is hereby ordered to produce, within twenty-one (21) days of the date of this Order, responsive information regarding: (1) the number of times Defendant engaged/retained these individuals (directly or through a third party vendor) to perform a medical review or examination of a disability claimant between 2003 and 2006; and (2) the compensation provided to each individual for each such medical review or examination they performed for Defendant between 2003 and 2006. *See Nagele*, 193 F.R.D. at 111.

## 2. *Information Regarding Defendant's Third Party Vendors*

Plaintiff also seeks information regarding Defendant's contracts, if any, with third party vendors who may have been retained to review medical records, perform IMEs, or conduct surveillance of Plaintiff. *See* Pl. Mem. at 10; Newfield Decl., Ex. I (Interrogatory No. 8). In

response, Defendant suggested that it submit responsive third party vendor contracts to the Court

for an *in camera* review so that the Court "could then decide whether the vendor agreements

contain any information showing a conflict of interest and, if so, the Court could order their

production subject to an appropriate protective order insuring confidentiality, sealing, non-

disclosure." Def. Mem. at 24. Because Defendant asserts that these contracts contain

confidential information, the Court finds it appropriate to have Defendant submit these third

party vendor contracts to the Court for an *in camera* review. In *Asuncion*, for example, the Court

conducted an *in camera* review of three contracts between the defendant and its independent

medical personnel and subsequently ordered production of one of those contracts after finding

there was "at least a suggestion in the contract that [the individual] may have been hired serve as

a consultant in the first instance as the result of her espousal of a particular point of view as to

whether it is generally in a claimant's best interest to work, rather than to receive disability

benefits." *Asuncion*, 493 F. Supp. 2d at 723.

Accordingly, Defendant is directed to provide the Court, for an *in camera* review, with

Defendant's contracts, if any, with third party vendors who may have been retained to review

medical records, perform IMEs, or conduct surveillance of Plaintiff. The submission of these

contracts to the Court must be made within twenty-one (21) days of the date of this Order.

### 3. *Information Regarding Financial Incentives*

Plaintiff also seeks information regarding any financial incentives, bonuses, or other

compensation that Defendant paid to the individuals involved in determining Plaintiff's claim for

benefits. *See* Newfield Decl., Ex. I (Interrogatory No. 10). Defendant has offered to provide

Plaintiff with an affidavit from an authorized representative verifying that Defendant's LTD

claims personnel did not receive any promotional or financial incentives for denying LTD claims. Def. Mem. at 23. Defendant contends that the provision of such an affidavit should be sufficient because, as noted above, Defendant asserts that between 1995 and the present, self-insured LTD benefits have always been paid out of the VEBA Trust and never out of Defendant's operating budget or assets, and therefore there is no potential for a conflict of interest. *See id.* at 8-9. Plaintiff counters that his entitlement to other "financially significant" employee benefits, such as life insurance benefits, was directly tied to his eligibility for LTD benefits. Reply Mem. at 4; Reply Decl. of Jason Newfield ("Newfield Reply Decl."), Ex. A. Accordingly, to the extent no trust existed to fund those attendant employee benefits, Plaintiff argues that Defendant maintained a financial stake in the decision whether to award Plaintiff LTD benefits, thereby creating a conflict of interest.

In *Nagele*, the court found that even if the defendant did not insure the LTD benefits at issue, thereby removing the possibility of a structural conflict of interest on those grounds, "if a decision maker were granted incentives based on the frequency of claim denials processed or other forms of compensation related to approval or denial of claims for benefits, such potential financial influences could pose a risk of arbitrary action and may well be relevant to Plaintiff's claims." *Nagele*, 193 F.R.D. at 109; *see also Hogan-Cross*, 2008 WL 2938056 at * 3 ("The bases for and amounts of compensation paid to employees and outside consultants involved in plaintiff's benefit termination itself could prove relevant to plaintiff's claim. Certainly it could lead to other relevant evidence.").

If Plaintiff's employee benefits, such as life insurance or other medical benefits, were directly tied to his eligibility for LTD benefits, there is a reasonable chance that discovery

regarding financial incentives or bonuses paid to the individuals involved in the claims process could be relevant to the existence of a conflict of interest. Accordingly, the Court directs Defendant to produce, within twenty-one (21) days of the date of this Order, information and documents showing whether any of the individuals involved in determining Plaintiff's claim for LTD benefits received any financial incentives, bonuses, or other monetary awards during the relevant time period and the basis upon which such financial incentives, bonuses, or other monetary awards, if any, were earned. *See id.* at 110.

### B. Deposition of Committee Member and Rule 30(b)(6) Deposition

Plaintiff seeks to depose individuals involved in processing Plaintiff's LTD benefits claim in order to "illuminate" certain issues. *See* Reply Mem. at 6, 8, and 9. Specifically, as noted above, Plaintiff contends that the individuals handling Plaintiff's benefits claim attempted to influence the doctors and medical professionals reviewing Plaintiff's file by "editorializing" Plaintiff's medical condition, and that deposition testimony is needed to explore the "appropriateness" of such conduct. *Id.* at 6, 8. Plaintiff also contends that the record evidence shows that Defendant's claims handlers "chose to embrace its prior claim determination, through the appeal process, and therefore failed to adhere to a no-deference mandate embodied in ERISA regulations." *Id.* at 9.

The Court finds that Plaintiff has made a showing that there is a reasonable chance that some deposition testimony may uncover evidence of a conflict of interest. At the same time, however, the Court will not permit unbridled discovery in the form of unlimited depositions. Accordingly, Plaintiff may serve a Rule 30(b)(6) notice to depose an appropriate individual regarding the identities of the individuals who made the decision to deny Plaintiff LTD benefits

as well as the criteria used by Defendant in making that decision and in determining Plaintiff's appeal. *See Allison*, 2005 WL 1457636 at *13; *Sheehan v. Metro. Life Ins. Co.*, No. 01 Civ. 9182, 2002 WL 1424592, at *6 (S.D.N.Y. June 28, 2002) (permitting depositions of the defendant's employees to determine "which persons were involved in the evacuation of plaintiff's claims for benefits, in particular whether Bear Sterns influenced Met Life's evaluation of the claim, and what procedure was followed in terminating plaintiff's benefits").

The Court will also allow Plaintiff to depose one individual who was involved in the decision to deny Plaintiff LTD benefits. *See Locher*, 389 F.3d at 296 (crediting deposition testimony of a benefit analyst who worked on the plaintiff's appeal); *Samedy*, 2006 WL 624889 at *2 (finding policy goals of limiting discovery in ERISA matters would not be frustrated by permitting the deposition of one of the defendant's employees regarding whether a conflict of interest existed and whether such conflict influenced the defendant's decision to deny the plaintiff's LTD benefits); *Mitchell*, 237 F.R.D. at 54 (permitting depositions of three of the defendant's employees on "matters that may not be reflected in the administrative record itself and that are consistent with the categories outlined in *Nagele*"). This employee deposition will be strictly limited to (1) such individual's involvement in Plaintiff's claim and/or appeal process as well as the decision to deny Plaintiff LTD benefits; (2) any communication the individual may have had, either orally or in writing, with any medical professional/consultant or third party vendor regarding Plaintiff's LTD benefit claim or appeal; and (3) three hours duration. Both of these depositions must take place within sixty (60) days of the date of this Order.

## C.     Third Party Discovery

Finally, Plaintiff seeks to serve subpoenas for depositions of the doctors who examined Plaintiff and/or Plaintiff's medical records and rendered an opinion as to his physical condition. With one exception, the Court finds that it is not reasonably likely that deposing these doctors will uncover evidence demonstrating a conflict of interest.

Plaintiff asserts that Dr. Rosenberg's submission of an addendum to his initial report "scream[s] out" for deposition testimony." Reply Mem. at 6. In an October 7, 2003 letter from one of Defendant's disability claim managers to Dr. Rosenberg, the claim manager confirms that Dr. Rosenberg will examine Plaintiff on October 14, 2003 and further notes that Defendant will provide Plaintiff transportation to the doctor's office at Plaintiff's request. Newfield Decl., Ex. C. The letter goes on to state that: "we felt it noteworthy that when we placed Mr. Burgio under a period of surveillance recently (report forwarded to you separately), he was noted to drive without apparent difficulty and at a high rate of speed." *Id.* Thus, as Plaintiff points out, it appears that Dr. Rosenberg was provided with surveillance reports before he examined Plaintiff.

The record here reflects that Dr. Rosenberg examined Plaintiff on October 14, 2003 and prepared an initial report which did not mention any surveillance videos or reports in the list of materials reviewed and considered. Def. Appx. of Exhibits, Ex. C. The initial report concluded with Dr. Rosenberg's opinion that "Frank Burgio is not capable of performing every duty pertaining to his occupation as a Prudential Representative." *Id.*

On November 10, 2003, Defendant's disability claim manager again wrote to Dr. Rosenberg, noting that the initial report did not "indicate that you had reviewed the surveillance report or DVD we provided along with his medical records" and explaining, in some detail, what

was depicted on the DVD and in the surveillance report. *Id.* The November 10 letter also stated: "[p]lease be advised that Mr. Burgio's job is classified as light duty and requires occasional walking, occasional standing, occasional sitting, and he would not have to lift any more than 10 pounds . . . ." *Id.* The letter concluded by requesting that Dr. Rosenberg review the surveillance report and "provide an addendum to your initial report and comment on Mr. Burgio's contradictions and whether these observations would change your opinion that Mr. Burgio is totally disabled from performing his former job as an agent." *Id.* In his Addendum Report, also dated November 10, 2003, Dr. Rosenberg indicated he had reviewed the surveillance videos and concluded "that Mr. Burgio is capable of performing his job duties as an agent for Prudential Financial." *Id.*

Given the thoroughness of Dr. Rosenberg's initial report, the nature of the correspondence sent to Dr. Rosenberg on November 10, 2003, and the conclusions contained in his two-page Addendum Report (also dated November 10, 2003) – which seem to be based entirely on his review of surveillance materials that were presumably in his possession before his initial report was prepared – the Court finds there is a reasonable chance that deposing Dr. Rosenberg will uncover evidence relating to "good cause." *See Trussel*, 552 F. Supp. 2d at 391-92 (finding discrepancies between IME report and three addenda as well as the defendant's "efforts to pick and choose the portions of the policy it wished Dr. Jares to interpret also tend to show a conflict of interest"). In particular, the testimony from this deposition may lend support to the theory that Defendant's correspondence with Dr. Rosenberg regarding the surveillance tapes, as well as Dr. Rosenberg's subsequent reversal of his opinion of Plaintiff's medical condition, constituted a "procedural irregularity." Accordingly, Plaintiff may serve a deposition

subpoena on Dr. Rosenberg addressed to the limited issues of Plaintiff's medical records, his examination of Plaintiff, his correspondence with Defendant as to Plaintiff's claim, his conclusions regarding Plaintiff's condition and the bases for those conclusions. This deposition must be conducted within sixty (60) days from the date of this Order.

## VI.    CONCLUSION

For these reasons, the Court finds that additional discovery is appropriate in this matter. Plaintiff's motion to compel is therefore GRANTED. The Court emphasizes that its decision to permit this additional discovery "is not tantamount to a ruling that the information gleaned from discovery will be considered" by the district court. *See Allison*, 2005 WL 1457636 at *13. Rather, this additional discovery "is intended only to give the plaintiff an opportunity to show that good cause exists for going outside the administrative record." *Id.* Therefore, it is hereby

ORDERED, that with respect to the four individuals listed in Plaintiff's Interrogatory No. 9, Defendant is directed to produce, within twenty-one (21) days of the date of this Order, responsive information regarding: (a) the number of times Defendant engaged/retained these individuals (directly or through a third party vendor) to perform a medical review or examination of a disability claimant between 2003 and 2006; and (b) the compensation provided to each individual for each such medical review or examination they performed for Defendant between 2003 and 2006; and it is further

ORDERED, that Defendant is directed to provide the Court for *in camera* review, within twenty-one (21) days of the date of this Order, Defendant's contracts, if any, with third party vendors who may have been retained to review medical records, perform IMEs, or conduct surveillance of Plaintiff; and it is further

ORDERED, that Defendant is directed to produce, within twenty-one (21) days of the date of this Order, information and documents regarding whether any of the individuals involved in determining Plaintiff's claim for LTD benefits received any financial incentives, bonuses, or other monetary awards during the relevant time period and the basis upon which such financial incentives, bonuses, or other monetary awards, if any, were earned; and it is further

ORDERED, that Plaintiff may serve a Rule 30(b)(6) deposition notice on an appropriate individual and that such deposition, which must be conducted within sixty (60) days of the date of this Order, will be limited to questioning regarding the identities of the individuals who made the decision to deny Plaintiff LTD benefits and the criteria used by Defendant in making such decision and in determining Plaintiff's appeal; and it is further

ORDERED, that Plaintiff may depose one individual, within sixty (60) days of the date of this Order, who was involved with Prudential's decision to deny Plaintiff LTD benefits and the deposition will be strictly limited to (a) such individual's involvement in Plaintiff's claim and/or appeal process as well as the decision to deny Plaintiff LTD benefits; (b) any communication that individual may have had, either orally or in writing, with any medical professional/consultant or third party vendor regarding Plaintiff's LTD benefit claim or appeal; and (c) three hours duration and it is further

ORDERED, that Plaintiff may serve a deposition subpoena upon Dr. Rosenberg on the limited issues of Plaintiff's medical records, his examination of Plaintiff, his correspondence with Defendant as to Plaintiff's claim, his conclusions regarding Plaintiff's condition, and the bases for those conclusions. This deposition must be conducted within sixty (60) days from the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
September 24, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge