**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
FRANK BURGIO,

                              Plaintiff,

                - against -

THE PRUDENTIAL LIFE INSURANCE
COMPANY OF AMERICA,

                            Defendant.
-----------------------------------------------------------X

**ORDER**

CV 06-6793 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.       PRELIMINARY STATEMENT**

      Plaintiff Frank Burgio ("Plaintiff" or "Burgio") brought this action against Defendant The

Prudential Insurance Company of America ("Defendant" or "Prudential") for the unlawful denial

of long term disability ("LTD") benefits to which he claims entitlement as a beneficiary of

Prudential's LTD Plan, an employee welfare benefit plan governed by the Employee Retirement

Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq.  Currently

before the Court is Plaintiff's motion seeking (1) permission to take a limited deposition of Dr.

Patrick Foye, the medical reviewer who performed the final review of the claim materials on

Defendant's behalf; and (2) to compel the production of documentation that "addresses the

requirements upon a District Agent for Prudential (the occupation of Plaintiff)" [DE 31].  The

Court has reviewed Plaintiff's motion papers, Defendant's opposition papers [DE 32], and

Plaintiff's April 3 and September 11, 2009 notices of supplemental authority [DE 34, 36].  In

addition, the parties appeared for oral argument on February 3, 2009.  After a careful review of

the parties' respective positions and the applicable case law, I am hereby GRANTING, in part, and DENYING, in part, Plaintiff's Motion.

## II.    BACKGROUND

Plaintiff became disabled in 1993 and, pursuant to a finding that Plaintiff was unable to perform his occupation as a District Agent (the relevant definition of disability under the LTD Plan), Prudential began to pay LTD benefits to Plaintiff under the LTD Plan.  In or around 2000, Plaintiff maintained that he was still unable to perform his duties as a district agent and that his condition had worsened, in response to which Prudential decided to conduct an evaluation of Plaintiff.

First, Prudential had a surveillance video made of Plaintiff while he engaged in various types of activities.  Defendant's counsel states that the video is approximately two hours in length and shows Plaintiff driving and coaching a youth baseball game where, according to Defendant, Plaintiff stood for nearly two hours, pitched balls to some of the children, picked up children and carried equipment bags.  Prudential also had Plaintiff evaluated by a physician, Dr. Rosenberg.  It is undisputed that Dr. Rosenberg was provided with the surveillance video prior to the examination and that he concluded that Plaintiff was able to perform his duties as a District Agent.  Based upon the surveillance video and Dr. Rosenberg's independent medical examination ("IME") of Plaintiff, Prudential terminated Plaintiff's benefits at the end of 2003, effective as of January 1, 2004.  Thereafter, Plaintiff filed four separate appeals of Prudential's decision to terminate his LTD benefits.  As part of those appeals, he was entitled to provide Prudential with any documentation regarding his condition.  During the appeals process,

Prudential had Plaintiff's claim reviewed by two doctors -- Dr. Kaplan and Dr. Foye -- each of whom concluded that Plaintiff was able to perform his duties as a District Agent.

## III.   THE PARTIES' CONTENTIONS

### A.   Plaintiff's Request To Depose Dr. Foye

First, Plaintiff argues that he is entitled to take a limited, two-hour deposition of Dr. Foye, the outside medical reviewer who performed the final review of the claim materials on Defendant's behalf.  Plaintiff's counsel asserts that to date, he has "been unable to address any of Dr. Foye's involvement with the claim, because [the] previous depositions were limited to eliciting  testimony from Prudential witness(es) solely as to their involvement with the claim." DE 31.  Plaintiff explains that, pursuant to this Court's September 24, 2008 Order [DE 27] granting Plaintiff's Motion to Compel (the "September 24, 2008 Order"), Plaintiff deposed Betty Ricci, a Prudential claims representative who was involved in the claim at the appeal level, but who was not involved with the final decision to terminate Plaintiff's benefits.  Rather, according to Plaintiff, "that person was Mariellen Scoopo, who is no longer employed by Prudential, and was thus unable to be produced for deposition."[1]  DE 31.  Also pursuant to this Court's September 24 Order, Plaintiff deposed Andrew Schopfer, who was Prudential's designated Rule

---

[1]      Plaintiff notes that "[h]ad we deposed Ms. Scoopo, we could have inquired as to Dr. Foye's involvement."  DE 31, n. 2.  However, pursuant to this Court's September 24 Order Plaintiff was entitled "to depose one individual who was involved in the decision to deny Plaintiff LTD benefits.  The Court limited the scope of the deposition to (1) such individual's involvement in Plaintiff's claim and/or appeal process as well as the decision to deny Plaintiff LTD benefits; (2) any communication the individual may have had, either orally or in writing, with any medical professional/consultant or third party vendor regarding Plaintiff's LTD benefit claim or appeal; and (3) three hours duration."  DE 27.  Thus, Plaintiff could have subpoenaed Ms. Scoopo for this deposition, but chose instead to take the deposition of Ms. Ricci, a decision which Plaintiff's counsel described as a "strategic choice."

30(b)(6) witness,[2] and Dr. Craig Rosenberg who, as explained above, examined Plaintiff prior to Prudential's termination of his LTD benefits. Plaintiff contends that if he is "unable to depose Dr. Foye, it is conceivable that the District Court could rest its determination of the action solely upon Prudential's reliance upon Dr. Foye's review, which would severely prejudice Plaintiff." *Id*.

At oral argument, Plaintiff explained that, as a result of the three depositions which Plaintiff was permitted to take pursuant to this Court's September 24, 2008 Order, Plaintiff has learned new information which necessitates taking the deposition of Dr. Foye, separate and apart from Ms. Scoopo. During her deposition, Ms. Ricci was shown the invoice submitted by Dr. Kaplan (who, along with Dr. Foye, reviewed Plaintiff's claim file but did not examine Plaintiff, and who are sometimes referred to as the "paper reviewing doctors"). The invoice shows that Dr. Kaplan billed Prudential for 1½ hours of work for reviewing the surveillance video and medical records. However, according to Plaintiff, the surveillance video is two hours long and the medical records purportedly reviewed by Dr. Kaplan are quite extensive. According to Plaintiff, Ms. Ricci had no explanation for this discrepancy between the amount of materials allegedly reviewed and the time it took to perform such review.

It is undisputed that Dr. Foye's report refers to the surveillance video provided by Prudential and to the conclusions of Dr. Rosenberg and Dr. Kaplan, and that the report was relied upon by Prudential in deciding Plaintiff's final appeal of the termination of his LTD benefits.

_____

[2] Pursuant to the September 24 Order, Plaintiff was granted leave "to serve a Rule 30(b)(6) notice to depose an appropriate individual regarding the identities of the individuals who made the decision to deny Plaintiff LTD benefits as well as the criteria used by Defendant in making that decision and in determining Plaintiff's appeal." DE 27.

Thus, Plaintiff asserted at oral argument that the discrepancies in Dr. Kaplan's report and the extent to which Dr. Foye relied upon Dr. Kaplan's report create doubt as to the credibility of Dr. Foye, Dr. Kaplan and Prudential's claim review process. Moreover, Plaintiff questions Prudential's determination of Plaintiff's appeals based upon the reports of the paper reviewing doctors rather than on the opinions of the doctors who actually examined Plaintiff and who (with the exception of Dr. Rosenberg) apparently concluded Plaintiff could not perform the duties of a District Agent.

Also at oral argument, Plaintiff explained that, as a result of documents Plaintiff obtained pursuant to this Court's September 24 Order, Plaintiff learned that between 2003 and 2005, Dr. Foye earned between $137,000 and $158,000 per year, or approximately $450,000 over the three-year period working for Prudential -- including the period when Dr. Foye reviewed Plaintiff's claim file. For all of these reasons, Plaintiff asserts he is entitled to depose Dr. Foye and further proposes that the scope of this deposition be limited to the topics on which Plaintiff was permitted to depose Dr. Rosenberg (*i.e.*, Plaintiff's medical records, Dr. Foye's examination of Plaintiff's file, Dr. Foye's correspondence with Prudential as to Plaintiff's claim, his conclusions regarding Plaintiff's condition, and the bases for those conclusions).

In further support of his position, Plaintiff points to *Wein v. Prudential Insurance Company of America*, No. 03-CV-6525, 2006 WL 2844176, at *10 (E.D.N.Y. Oct. 2, 2006), in which the district judge, according to Plaintiff, "chastised" Prudential and Dr. Foye for his cursory review of the relevant material. Likewise, in follow-up letters [DE 34, 36], Plaintiff provided "notice of authority" with regard to two recent decisions which, according to Plaintiff, support his position that he should be granted leave to depose Dr. Foye. These decisions, which

5

are discussed further below, are *Sansby v. Prudential Insurance Company of America*, No. 97-11524, 2009 WL 799468 (D. Mass. Mar. 25, 2009) and *Mergel v. Prudential Insurance Company of America*, 09 CV 00039, 2009 WL 2849084 (S.D.N.Y. Sept. 1, 2009).

In opposition, Defendant argues that in the September 24, 2008 Order [DE 27], this Court previously considered Plaintiff's request to depose Dr. Foye (in the Motion to Compel [DE 18], when Plaintiff sought permission to depose Doctors Rosenberg, Kaplan and Foye) and, with the exception of Dr. Rosenberg, denied Plaintiff's application on the grounds that "it is not reasonably likely that deposing these doctors will uncover evidence demonstrating a conflict of interest." Because, according to Defendant, Plaintiff's instant motion does not set forth any new allegation regarding a potential conflict of interest, the Court should again reject Plaintiff's request to depose Dr Foye. *See* DE 32. Moreover, Defendant argues, Plaintiff's request to depose Dr. Foye does not relate to an alleged conflict of interest, but rather goes to the merits of his medical determination, which is outside the permissible scope of discovery in this case. Regarding Plaintiff's assertion that he "could have inquired as to Dr. Foye's involvement" if he had deposed Mariellen Scoopo (who handled one of Plaintiff's appeals but no longer works at Prudential), Defendant argues that, pursuant to this Court's September 24 Order (permitting Plaintiff to "depose one individual . . . who was involved in Prudential's decision to deny Plaintiff's LTD benefits . . ."), Plaintiff was free to subpoena Ms. Scoopo if he so chose. DE 32.

At oral argument, Defendant claimed that Ms. Ricci, during her deposition, provided a plausible explanation as to why Dr. Kaplan may have billed Prudential for 1½ hours of work for his review of the surveillance video and medical records, even though the surveillance video is two hours in length. According to Defendant, Ms. Ricci testified that it was possible that Dr.

Kaplan fast-forwarded through parts of the video because it may not have been necessary for him to watch the entire video in "real time" in order to understand the types of activities in which Plaintiff was engaged.

## B.    Plaintiff's Request For Documentation

Plaintiff maintains that he is entitled to documentation that "addresses the requirements upon a District Agent for Prudential (the occupation of Plaintiff)."  DE 31.  To this end, Plaintiff asserts that "[i]ssues have arisen during the course of discovery [which] center around the frequency in which Plaintiff was required to have contact with potential clients, and documentation which Prudential disseminated to its District Agents would be relevant to those issues."  *Id*.  Moreover, Plaintiff maintains that "this material should not be difficult for Prudential to produce and could offer relevant evidence to address the claims and contentions of the parties."  *Id.*

In opposition, Defendant maintains that "[t]he Administrative Record already contains the job description of the district agent, as well as other documentation regarding the physical requirements of that position."  DE 32.  Moreover, Defendant argues that if Plaintiff is seeking additional documentation beyond what is contained in the Administrative Record, he is not entitled to such information because he has not shown that "information addressing the job requirements of a district agent has a connection with any alleged conflict of interest[,]" and such information is thus beyond the permissible scope of discovery.  *Id*.  Moreover, at oral argument, Defendant claimed that Plaintiff's request amounts to discovery on the merits, and that the job description contained in the administrative record is what was given to the paper reviewing doctors before they conducted the IMEs.

### III.    APPLICABLE LAW

#### A.    Motion to Compel Standard

A motion to compel is entrusted to the sound discretion of the district court. *See*

*American Savs. Bank, FSB v. UBS Paine Webber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d

Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has

noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its

rulings with regard to discovery are reversed only upon a clear showing of an abuse of

discretion." *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir.

1998). A district court is considered to have abused its discretion only "if it bases its ruling on a

mistaken application of the law or a clearly erroneous finding of fact." *Milanese v. Rust-Oleum*

*Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

#### B.    Standard of Review for ERISA Denial of Benefit Cases

As previously discussed with the parties (*see, e.g.*, DE 11), the scope of review (as

contrasted with the scope of discovery) in this matter, whether arbitrary and capricious or *de*

*novo*, is a matter properly within the District Court's jurisdiction, unless Judge Seybert otherwise

specifically refers that issue to me. Although the issue of the applicable standard of review is

distinct from the question of the proper scope of discovery, the former question does have some

impact on the latter, and so will be discussed briefly here.

"ERISA does not set out the applicable standard of review for actions challenging benefit

eligibility determinations." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (internal

quotation marks omitted). The Supreme Court, however, has made clear that "a denial of

benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a de novo standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v.

Bruch*, 489 U.S. 101, 115, (1989). If such discretion is given, a district court must review the

administrator's denial of benefits deferentially, and may reverse only if the administrator's

decision was arbitrary and capricious. *See Fay*, 287 F.3d at 104. When a plan does not grant

discretionary authority, a district court "reviews all aspects of an administrator's eligibility

determination, including fact issues, de novo." *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 98 (2d

Cir. 2003).

Under a *de novo* standard of review, a district court may consider evidence outside the

administrative record to determine issues of plan interpretation. *Locher v. UNUM Life Ins. Co.

of Am.*, 389 F.3d 288, 293 (2d Cir. 2004) (citing *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*,

112 F.3d 61 (2d Cir. 1997)). In addition, when conducting a *de novo* review, a district court may

examine evidence outside the administrative record to resolve factual disputes upon a showing of

"good cause," which could include a showing that "the administrator was not disinterested."

*Locher*, 389 F.3d at 294. The Second Circuit made clear, however, that such "a conflict of

interest does not per se constitute 'good cause' to consider evidence outside of the administrative

record upon a de novo review of factual issues bearing on an administrator's denial of ERISA

benefits." *Id*. (clarifying holding in *DeFelice*).

Were District Judge Seybert to determine ultimately that the "arbitrary and capricious"

scope of review is appropriate, however, discovery outside the administrative record is not

foreclosed. Under an "arbitrary and capricious" standard of review, courts (both within and

outside the Second Circuit) have considered evidence outside the administrative record in certain

9

circumstances.  *See Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50, 53

(S.D.N.Y. 2006) (citing *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 174 (2d Cir. 2001)

(noting that "the district court will not be confined to the administrative record" to determine

"whether Empire's decision to deny [Plaintiff's] coverage request was tinged by a conflict of

interest")); *see also Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995)

(approving and relying on pretrial discovery in ERISA denial of benefits case when "arbitrary

and capricious" standard was used).  For example, a court may properly rely on discovery outside

the administrative record to evaluate:

> (i) the exact nature of the information considered by the fiduciary in making its decision, (ii) whether the fiduciary was competent to evaluate the information in the administrative record, (iii) how the fiduciary reached its decision, and (iv) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim.

*Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 103 (W.D.N.Y. 2000) ("[R]eview under this

deferential [arbitrary and capricious] standard does not displace using pretrial discovery to

determine the actual parameters of the administrative record and whether or not the fiduciary

acted arbitrarily and capriciously with respect to a claim for benefits under a plan . . . .").

### C.      Standard To Determine Whether To Allow Additional Discovery

The question of the applicable standard of review is distinct from the question of the

proper scope of discovery, and "the decision as to whether to allow discovery is distinct from the

decision as to whether to allow consideration of additional evidence."  *Allison v. Unum Life Ins.

Co.*, No. CV 04-0025, 2005 WL 1457636, at * 11 (E.D.N.Y. Feb. 11, 2005).  "If discovery is

allowed, the plaintiff can then apply to the district judge for a determination as to whether she

will expand the record to include information that discovery yielded, the nature of which is not yet known." *Id.* However, as I have previously explained to the parties, the determination of the appropriate standard of review did not stay discovery because "[e]ven if Judge Seybert were to decide that the arbitrary and capricious standard is the proper scope of review, pretrial discovery in this matter is not foreclosed." *See* DE 11.

Where, as here, evidence outside of the administrative record is sought at the discovery stage, the petitioner "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Rubino v. Aetna Life Ins. Co.*, 07 Civ. 377, 2009 WL 910747, at *4 (E.D.N.Y. Mar. 31, 2009) (quoting *Trussel v. CIGNA Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008)) (internal quotation marks omitted); *Anderson v. Sotheby's Inc. Severance Plan*, 04 Civ 8180, 2005 U.S. Dist. LEXIS 9033, at *16 (S.D.N.Y. May 13, 2005) (finding plaintiff "must show a reasonable chance that the requested discovery will satisfy the good cause requirement to be entitled to discovery outside the administrative record). As noted in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious cycle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Anderson*, 2005 U.S. Dist. LEXIS 9033, at *17. "The good cause standard required to obtain evidence beyond the administrative record [through discovery] is therefore less stringent than when requesting that the court [] consider such evidence in its final determination." *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 230 (E.D.N.Y. 2008) (quoting *Trussel* , 552 F. Supp. 2d at 390-91). For example, in the September 24, 2008 Order in this case, this Court found there was "enough evidence raised by Plaintiff of a potential conflict

of interest to warrant limited discovery outside the administrative record" where Plaintiff demonstrated that "Defendant may have operated under a conflict of interest in that [Plaintiff's] eligibility for LTD benefits was allegedly tied to his continued eligibility for other employee benefits such as life insurance." *Burgio*, 253 F.R.D. at 231. Likewise, in *Samedy v. First Unum Life Insurance Company of America*, No. 05-CV-1431, 2006 WL 624889 (E.D.N.Y. Mar. 10, 2006), the court granted limited discovery to assist in determining whether there was a conflict of interest because the defendant was both the insurer and the claim administrator and plaintiff had provided a declaration from a former employee who indicated that defendant placed pressure on its employees to deny claims. *Samedy*, 2006 WL 624889, at *2 (discussed in *Schalit v. CIGNA Life Ins. Co. of N.Y.*, No. 07 Civ. 0476, 2007 WL 2040587, at *2 (S.D.N.Y. Jul. 12, 2007)).

## IV.  DISCUSSION

In the instant case, Plaintiff seeks leave to (I) take the limited deposition of Dr. Foye, and (ii) obtain documentation that "addresses the requirements upon a District Agent for Prudential (the occupation of Plaintiff)." The Court examines each of these requests in turn.

### A.  Plaintiff's Request To Depose Dr. Foye

Plaintiff argues that he is entitled to depose Dr. Foye based upon information that has been obtained from discovery in this case subsequent to the Court's prior Order. Defendant opposes the motion on the grounds that Plaintiff's asserted need for the deposition does not demonstrate the requisite allegation of good cause. The Court agrees with Defendant's contention that the Court has already considered and rejected Plaintiff's request to depose Dr. Foye in connection with Plaintiff's Motion to Compel [DE 18]. In that decision, this Court considered specific allegations made by Plaintiff with respect to Dr. Foye, including that in

12

reaching his conclusions, Dr. Foye was improperly influenced by Prudential's "editorializations" of Plaintiff's claim. Based upon Plaintiff's allegations that (1) the individuals handling his benefits claim attempted to influence the doctors and medical professionals reviewing his claim by "editorializing" his medical condition, (2) deposition testimony is needed to explore the "appropriateness" of such conduct, and (3) the record evidence shows that Prudential's claim handlers "chose to embrace its prior claim determination, through the appeal process, and therefore failed to adhere to a no-deference mandate embodied in ERISA regulations," the Court concluded that Plaintiff had demonstrated "a reasonable chance that some deposition testimony may uncover evidence of a conflict of interest[,]" and so granted Plaintiff permission "to serve a Rule 30(b)(6) notice to depose an appropriate individual regarding the identities of the individuals who made the decision to deny Plaintiff LTD benefits as well as the criteria used by Defendant in making that decision and in determining Plaintiff's appeal." *Burgio*, 253 F.R.D. at 235 (citations omitted). The Court further granted leave for Plaintiff to depose one individual who was involved in the decision to deny Plaintiff LTD benefits, but limited to the scope of the deposition to (1) such individual's involvement in Plaintiff's claim and/or appeal process as well as the decision to deny Plaintiff LTD benefits; (2) any communication the individual may have had, either orally or in writing, with any medical professional/consultant or third party vendor regarding Plaintiff's LTD benefit claim or appeal; and (3) three hours duration. *Id.* (citations omitted). Finally, with respect to Plaintiff's request to serve subpoenas for the depositions of Dr. Rosenberg, Dr. Kaplan and Dr. Foye, this Court found that, with one exception, it "was not reasonably likely that deposing these doctors will uncover evidence demonstrating a conflict of interest." *Id.* However, regarding the one exception, the Court found that Plaintiff had shown

"there was a reasonable chance that deposing Dr. Rosenberg will uncover evidence relating to 'good cause.'" *Id*. at 235-36.

In the instant motion, Plaintiff has made several allegations as to the credibility and reliability of Dr. Foye's conclusions and the propriety of Prudential's reliance upon doctors such as Dr. Foye and Dr. Kaplan, who reviewed only the paper file, as opposed to doctors who previously examined Plaintiff. However, Plaintiff has not proffered any new evidence, beyond that presented in the earlier motion to compel, to show that it is reasonably likely that deposing Dr. Foye will uncover evidence demonstrating a conflict of interest. Although Plaintiff's allegations as to the propriety of Dr. Foye's reliance upon the Dr. Rosenberg's and Dr. Kaplan's conclusions may (or may not) have merit, these are issues to be decided upon the merits of the case, after the scope of review has been determined.

The Court finds unavailing Plaintiff's contention that he should be permitted to depose Dr. Foye because he has "been unable to address any of Dr. Foye's involvement with the claim, because [the] previous depositions were limited to electing testimony from Prudential witness(es) solely as to their involvement with the claim at the appeal level, but was not involved with the final decision" [DE 31]. As noted earlier, pursuant to this Court's September 24, 2008 Order, Plaintiff was permitted to depose one individual who was involved in the decision to deny Plaintiff LTD benefits, as well as to inquire of a Rule 30(b)(6) witness regarding "the criteria used by Defendant in making that decision and in determining Plaintiff's appeal" [DE 27]. Thus, Plaintiff has had ample opportunity to gather evidence outside of the administrative record regarding Prudential's decision to reject Plaintiff's appeals. Likewise, Plaintiff cannot reasonably argue that he will be "severely prejudiced" if he is unable to depose Dr. Foye because

there is ample evidence regarding Prudential's purported reliance upon Dr. Foye's review. Moreover, Plaintiff's argument that he should be entitled to take Dr. Foye's deposition because he was unable to depose Mariellen Scoopo (of whom, according to Plaintiff, he "could have inquired as to Dr. Foye's involvement") is not persuasive -- Plaintiff had the opportunity to subpoena and depose Ms. Scoopo, but for "strategic reasons" chose to depose Ms. Ricci instead.

The cases cited by Plaintiff in his motion papers and during oral argument are distinguishable from the instant case. First, in *Wein v. Prudential Insurance Company of America*, Prudential similarly retained Dr. Foye as a non-examining medical consultant to review Plaintiff Wein's file during Prudential's evaluation of the administrative appeal. In reaching his conclusion that Wein was not able to perform her occupation, Dr. Foye reviewed the medical files from two doctors (Dr. Weiland and Dr. Stein) and two occupational therapists (Kobler and Barenholtz) who had examined plaintiff (and whose reports Wein had submitted to Prudential in support of her appeal). *Wein*, No. 03-CV-6525, 2006 WL 2844176, at *4 (E.D.N.Y. Oct. 2, 2006). Dr. Foye also spoke directly to Dr. Weiland and relied upon a job description provided by Wein's employer. Having determined that a *de novo* standard of review was appropriate, the court in *Wein* denied Prudential's motion for summary judgment on the grounds that, *inter alia*, Dr. Foye's report did not support Defendant's motion. *Id*. at *9-*10. The Court found as follows:

> It is uncontested that Dr. Foye did not examine Plaintiff, and arrived at his determination that she could work full time based on an incorrect statement of Plaintiff's job duties that described her duties as primarily managerial and supervisory in nature. Furthermore, Dr. Foye's report described but did not explain why it rejected the assessments of Dr. Stein, Kolber, and Barenholtz, which suggests that Dr. Foye did not adequately consider this evidence. Lastly, to the

> extent that Dr. Foye relied on a hearsay statement from Dr. Weiland
> to support his conclusion that Wein is not partially disabled, that
> hearsay statement cannot be considered by this court in support of
> Defendant's summary judgment motion . . . This court must therefore
> reject Dr. Foye's statement regarding Dr. Weiland's assessment of
> Plaintiff's condition because it is hearsay and Defendant offers no
> hearsay exception that might qualify it as competent, admissible
> evidence to support a summary judgment motion.

*Id*.

*Wein* is therefore distinguishable from the instant case on several grounds. First, the district court had already determined in *Wein* that the appropriate standard of review was *de novo*. *Id*. at *9. Thus, the court was free to consider evidence outside the administrative record and to evaluate Prudential's decision with a lesser degree of deference. Second, in deciding a motion for summary judgment, the Court was making a determination of the *merits* of the case -- not, as here, deciding whether expanded discovery should be permitted. Third, the court in *Wein* rejected Dr. Foye's report because (1) Dr. Foye admitted he relied upon the opinion of Dr. Weiland, who had examined plaintiff and noted in his report that she "had achieved full range of motion in her long fingers," and (2) Dr. Weiland told Dr. Foye (during a telephone conversation) that Wein had "full range of motion." *Id*. at *4, *5, *9. However, the court found that plaintiff's "claimed physical limitations concern the range of motion *in her right wrist and forearm*, not her fingers." *Id*. at *9 (emphasis in original). Thus, the court found that Dr. Weiland's assessment actually contradicted Prudential's position that plaintiff could work full time. That assessment called into question the reliability of Dr. Foye's report because it "rest[ed] heavily on Dr. Weiland's opinions," which had been discredited. *Id* at *4. The court further concluded that Dr. Foye's report did not support Prudential's position because Dr. Foye did not explain the reasons

for rejecting the assessments of a doctor and two occupational therapists who had examined plaintiff and found significant limitations in the range of motion of her wrist. *Id*. at *10. In the instant case, although Plaintiff challenges the reliability of Dr. Kaplan's report and Dr. Foye's reliance upon that report, at this point in the proceedings, this Court is not concerned with crediting or discrediting Dr. Kaplan's report, which will eventually be resolved by motion practice on the merits or at trial. The Court notes that the Administrative Record has not been produced to the Court, and Plaintiff has not provided any of the doctors' reports which he challenges, nor has he provided the deposition transcript of Ms. Scoopo, whom he questioned about the purported discrepancy between Dr. Kaplan's invoice and his report.

Moreover, the court in *Wein* found that in reaching his conclusion that plaintiff could work full-time, Dr. Foye had relied upon an incorrect statement of Wein's job duties. *Id*. at *10. Following Plaintiff's second administrative appeal (which occurred well after Dr. Foye's review), during which she submitted three affidavits from her co-workers regarding her job duties, Prudential acknowledged that the job description it had used earlier in the proceedings was "inaccurate." *Id*. at *6. In the instant case, Plaintiff alleges that Prudential has "watered down" Plaintiff's job description. However, unlike in *Wein*, here Prudential has not conceded that it provided Dr. Foye with an incorrect job description. Thus, based upon the evidence submitted by Plaintiff, this Court cannot conclude that Plaintiff has made a sufficient showing to warrant the deposition of Dr. Foye on this subject. Finally, in *Wein*, Dr. Foye's report was rejected largely because it relied upon Dr. Weiland's assessment of Plaintiff's condition, which, in the context of Dr. Foye's report, constituted a hearsay statement which could not be considered by the court in support of Prudential's summary judgment motion. *Id*. Here, the issue now before the Court is

to determine the proper scope of discovery, which is quite distinct from a determination at summary judgment. In any event, the Court has not been provided with Dr. Foye's report or the reports of the other doctors and so is not in a position to comment on the content of such reports.

Next, Plaintiff draws the Court's attention to *Sansby v. Prudential Insurance Company of America*, in which, according to Plaintiff Bugrio, the court "permitted statistical information concerning the number of claims that Dr. Foye recommended be denied as opposed to the number of claim[s] recommended be allowed, as well as production of documents reflecting correspondence between Prudential and Dr. Foye shedding light on his relationship with Prudential, and his compensation from Prudential." *See* DE 34.

In analyzing *Sansby*, the court initially notes that a decision by the District Court of Massachusetts is not binding authority upon this Court. Moreover, this case is distinguishable for several reasons. First, the court in *Sansby* granted, in part, plaintiff's motion for limited discovery on the grounds that "Prudential's denial of benefits in the face of what appears to be overwhelming evidence supporting plaintiff's claim satisfies her burden of making a preliminary showing that a conflict of interest may have influenced Prudential's decision." *Sansby*, No. 97-11524, 2009 WL 799468, at *2 (D. Mass. Mar. 25, 2009). The "overwhelming evidence" reviewed by the court included "numerous medical reports - from surgeons, internists, pain management doctors, psychiatrists, rheumatologists, neurologists, and an inpatient pain management program-all supportive of her claim of disability . . . [and] two independent vocational examinations, all of which plaintiff had submitted to Prudential in support of her claim. Despite this evidence, Prudential "based it denial of benefits solely on the opinions of two MLS physicians and Dr. Foye, none of whom personally examined Sansby." *Id*. In the instant

case, however, this Court has not been provided with any evidence that Plaintiff submitted to Prudential contemporaneous reports from doctors which conflicted with the reports of Dr. Foye, and which Plaintiff contends Prudential failed to consider. Thus, based upon the information available, this Court finds that Plaintiff here has not made a showing of a potential conflict of interest under circumstances similar to *Sansby*.

In *Sansby*, the court ordered Prudential to produce the following information:

> [A]ll documents that reflect correspondence between Prudential, MLS, and Dr. Foye, with regard to her claim [, as well as] . . . documents shedding light on Prudential's relationship with MLS and Dr. Foye during the four-year period during which Sansby's claim was being processed, including any instructions given by Prudential to MLS and Dr. Foye regarding the writing of reports; the total amount of compensation paid to MLS and Dr. Foye during the four-year period; the number of claims referred by Prudential to MLS and to Dr. Foye; and reliable statistics showing the number of claims that MLS and Dr. Foye recommended be denied, as opposed to the number of claims that MLS and Dr. Foye recommended be allowed.

*Id*. Much of the discovery directed by the court in *Sansby* has already been produced in the instant case. After hearing from the parties at the Initial Conference on May 30, 2007, I permitted limited discovery to proceed and directed Defendant to:

- Identify the information considered by the LTD administrator and/or decision maker in reaching its decision to terminate Plaintiff's benefits;

- Produce excerpts of any policies, procedures, and/or guidelines, including manuals, used by Defendant in reaching its determination to terminate benefits, to the extent such documents are not privileged;

- Produce the curriculum vitae for medical, vocational and expert personnel identified in the case file, including any individuals involved in the decision to terminate Plaintiff's LTD benefits; and

- Certify that the entire administrative record had been produced.

*See* DE 11 (May 30, 2007 Civil Conf. Minute Order).  During an appearance before the Court on

January 10, 2008, Plaintiff's counsel stated that Defendant had satisfactorily complied with the

May 30, 2007 Order.  Furthermore, in deciding Plaintiff's motion to compel, this Court found

that "Plaintiff is entitled to more detailed information about Defendant's past relationships with

these medical providers."[3]  With respect to the four individuals listed in one of Plaintiff's

interrogatories, I directed Defendant to produce (1) the number of times Defendant

engaged/retained these individuals (directly or through a third party vendor) to perform a medical

review or examination of a disability claimant between 2003 and 2006; and (2) the compensation

provided to each individual for each such medical review or examination they performed for

Defendant between 2003 and 2006.  *Burgio*, 253 F.R.D. at 233 (citation omitted).  The Court

further directed Defendant to provide, for *in camera* review, its contracts with third-party

vendors who may have been retained to review medical records, perform IMEs, or conduct

surveillance of Plaintiff.  Defendant was also instructed to produce information and documents

showing whether any of the individuals involved in determining Plaintiff's claim for LTD

benefits received any financial incentives, bonuses, or other monetary awards during the relevant

time period and the basis upon which such financial incentives, bonuses, or other monetary

awards, if any, were earned.  *Id*. at 234.  Thus, many of the materials discussed in *Sansby* have

already been produced in this case pursuant to this Court's prior orders.

Finally, Plaintiff directs the Court's attention to *Mergel v. Prudential Insurance Company

of America*, which, according to Plaintiff, "underscores that discovery in ERISA disability cases

can be robust, as the court denied Prudential's motion for protective order, and granted in part

---

[3]        These "medical providers" included Dr. Patrick Foye.

plaintiff's motion to compel." *See* DE 36. The court in *Mergel* granted, in part, plaintiff's motion to compel supplemental responses to certain document requests on the grounds that "Prudential's own claim file contains acknowledgments that it was 'probably unlikely' plaintiff would return to work, but that after plaintiff's Social Security benefits were cancelled and payment of his claim became more expensive for Prudential, the medical opinions changed." *Mergel*, 09 CV 00039, 2009 WL 2849084, at *2 (S.D.N.Y. Sept. 1, 2009). In other words, notes in Prudential's claim file (which was part of the administrative record) clearly showed that Prudential believed that plaintiff in *Mergel* was disabled. Notwithstanding this conclusion, Prudential denied plaintiff's claim after plaintiff stopped receiving Social Security benefits (which are determined by a different standard) and payment of plaintiff's claim thus became more expensive for Prudential. On this basis, the court in *Mergel* concluded that plaintiff had "shown a reasonable chance that the requested discovery will satisfy the good cause requirement." *Id*. (citations omitted).

    *Mergel* is clearly distinguishable from the instant case. Here, the Court has not been provided with any evidence demonstrating that Prudential believes Plaintiff is actually disabled but has denied his claims for impermissible reasons or in bad faith. Thus, this case is not analogous to the circumstances in *Mergel*. Moreover, to the extent Plaintiff asserts that *Mergel* supports his entitlement to "robust" discovery, the Court notes that Plaintiff in this case has already been permitted to take a significant amount of discovery, including document production and depositions of both fact witnesses and a corporate representative.[4]

---

[4]    The Court notes that independent research has revealed cases in which Dr. Foye's opinions, and Prudential's reliance upon such opinions, have been upheld. *See, e.g.*, *Mood v. Prudential Ins. Co. of Am.*, No. 04-CV-1488, 2008 WL 2120742, at *2-*5 (E.D.N.Y. May 13,

For the foregoing reasons, the Court finds that Plaintiff has not shown that there is a reasonable chance the deposition of Dr. Foye will satisfy the good cause requirement. Accordingly, Plaintiff's motion to depose Dr. Foye is DENIED.

**B.      Plaintiff's Request For Documentation
         Regarding The Requirements Of A District Agent**

Plaintiff asserts that he is entitled to "documentation that addresses the requirements upon a District Agent for Prudential (the occupation of Plaintiff)" [DE 31]. In opposition, Defendant argues that the administrative record already contains a sufficient job description and, in any event, Plaintiff has not made the requisite showing that "information addressing the job requirements of a district agent has a connection with any alleged conflict of interest." Such information is thus beyond the permissible scope of discovery according to Defendant [DE 32].

At oral argument, Plaintiff conceded that the administrative record contains a description of Plaintiff's job. However, based upon the discovery he has taken thus far, Plaintiff alleges that Prudential "watered down" the requirements of his job in the descriptions provided to the doctors who examined him, as well as to the paper reviewing doctors. Plaintiff argues that throughout his claim proceedings, Prudential supplied to various doctors job descriptions which, *inter alia*, improperly characterize the job as "light duty" when the job is actually more strenuous. In effect, Plaintiff contends that Prudential has provided varying job descriptions to doctors in a manner which could only lead them to conclude that, despite his medical condition, Plaintiff could perform his job as a District Agent.

_____

2008), *aff'd*, 313 Fed. Appx. 381 (2d Cir. 2009); *Simone v. Prudential Ins. Co. of Am.*, No. 04-CV-2076, 2005 WL 475406, at *3 (E.D.N.Y. Feb. 28, 2005).

Specifically, Plaintiff asserts that Prudential's early letters to doctors, including the letter sent to Dr. Adler (who examined Plaintiff and concluded that he was unable to fulfill his duties as a District Agent), describe the position of District Agent and some of the significant aspects of that position -- such as driving and the frequency with which a District Agent is required to have contact with potential clients, including evening appointments -- in a certain way. Later in the claim proceedings, Prudential began sending letters to subsequent doctors, including Dr. Rosenberg and Dr. Foye, which contained a different description of Plaintiff's job, including a classification of "light duty." Plaintiff maintains that the job description contained in the administrative record does not classify District Agent as a "light duty" occupation.

Likewise, Plaintiff asserts that during the deposition of Dr. Rosenberg, Plaintiff learned that prior to conducting the IME, Dr. Rosenberg received the medical claims file which included a description of Plaintiff's occupation and the surveillance video. In his report to Prudential, Dr. Rosenberg concluded that Plaintiff was unable to perform his occupation. Thereafter, Dr. Rosenberg received a letter from Prudential dated November 10, which stated that, based upon Dr. Rosenberg's report, it appeared that he had not reviewed the surveillance video -- Prudential requested that Dr. Rosenberg issue an addendum to his report after doing so. According to Plaintiff, Dr. Rosenberg testified that the November 10 letter "reclassified" Plaintiff's occupation in a different manner than had previously been communicated to him by Prudential. Subsequently, Dr. Rosenberg submitted an addendum to his report which contained the same assessment with respect to Plaintiff's restrictions and limitations in his first report, but with a different conclusion. The new conclusion was that based upon the new information provided by

Prudential regarding Plaintiff's job description, Plaintiff could perform the reclassified occupation.

The record currently before this Court raises questions as to the content of the job descriptions provided to the doctors and the impact these descriptions had on the doctor's conclusions regarding Plaintiff's ability to perform his job. Thus, the Court finds that Plaintiff has sufficiently demonstrated a potential conflict of interest to the extent Prudential may have sent varying job descriptions to doctors during the claim proceedings. Plaintiff is entitled to production of the job descriptions which were provided to the doctors involved in his claim proceedings, as well as the job descriptions relied upon by the claim administrators in evaluating his claim. Accordingly, Plaintiff has shown a reasonable chance that the requested discovery will satisfy the good cause requirement.

Defendant is directed to produce all correspondence, including the description of Plaintiff's job duties and responses, between Prudential and the individuals (directly or through a third-party vendor) who examined Plaintiff or reviewed his claim file during the course of his claim proceedings. Defendant is further directed to produce all internal memoranda regarding any description or characterization of the District Agent position, including the duties of District Agents.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to take discovery outside of the administrative record is hereby GRANTED, in part, and DENIED, in part. Defendants are directed to produce the documentation set forth above by **October 15, 2009**.

A Telephone Conference is scheduled for **November 2, 2009 at 10:30 a.m.** to discuss the remainder of the pretrial deadlines in this case. Plaintiff's counsel is directed to initial the call, with all counsel on the line, to Chambers at (631) 712-5760.

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge